UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IDEXX LABORATORIES, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 2:22-cv-00056-JDL |
| ) | |
| GRAHAM BILBROUGH, et al., ) | |
| ) | |
| Defendants ) | |

**ORDER ON MOTION FOR EXPEDITED DISCOVERY**

Plaintiff, a company that develops water testing and veterinary diagnostics products, alleges Defendants, two of its former employees, resigned their positions and accepted new positions with one of Plaintiff's competitors. (Complaint, ECF No. 1.) According to Plaintiff, because of the direct competition of the two companies' products and the substantial similarity of Defendants' roles with the companies, if Defendants are permitted to work in their new jobs, Defendants would inevitably rely on or disclose Plaintiff's trade secrets. (*Id.*) Plaintiff seeks a preliminary injunction prohibiting each defendant from either working in the new job or working on certain matters in the new job. (Motion for Preliminary Injunction, ECF No. 11.) Plaintiff also filed a motion seeking to conduct discovery before the Court holds a hearing on the request for preliminary injunction. (Motion for Expedited Discovery, ECF No. 10.)

After consideration of the parties' arguments, I deny Plaintiff's request for expedited discovery.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized … by stipulation, or by court order."  The record does not reflect that the parties have conferred as contemplated by Rule 26(f), and the Court has not issued a scheduling order to govern discovery.

In matters involving a request for early or expedited discovery, including discovery in advance of the Rule 26(f) conference, courts typically have required the proponent to demonstrate good cause for departing from the ordinary discovery process.  *Patrick Collins, Inc. v. Does 1-79*, 286 F.R.D. 160, 163 (D. Mass. 2012).  Courts have found that "good cause for expedited discovery exists if the request is reasonable in light of all the circumstances," including "[1] the purpose for the discovery, [2] the ability of the discovery to preclude demonstrated irreparable harm, [3] the plaintiff's likelihood of success on the merits, [4] the burden of discovery on the defendant, and [5] the degree of prematurity."  *KPM Analytics N. Am. v. Blue Sun Sci.*, LLC, No. CV 21-10572-TSH, 2021 WL 2002581 (D. Mass. May 19, 2021) (internal quotation marks and modifications omitted).

## DISCUSSION

Plaintiff seeks to conduct depositions of and serve requests for production of documents on Defendants and their current employer.  (Motion at 1.)  Plaintiff argues the discovery is necessary "to determine the full extent to which Defendants' job duties . . . overlap with their prior responsibilities to [Plaintiff] and the extent to which Defendants

have already disclosed or used [Plaintiff]'s trade secrets . . . before a hearing on [Plaintiffs]'s application for a preliminary injunction is held." (Motion at 6.) Defendants argue the request lacks good cause as Plaintiff cannot obtain injunctive relief on its asserted federal claim under the Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1836 et seq. Defendants intend to move to dismiss the matter.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton,* 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)). Pursuant to § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff's DTSA claim is the only federal cause of action mentioned in the complaint; Plaintiff's other claims arise under state law. Pursuant to section 1332, federal district courts also have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 … and is between citizens of different States." 28 U.S.C. § 1332(a)(1). In order for a federal court to exercise diversity jurisdiction over claims arising under state law, however, the plaintiff and all the defendants must have been citizens of different states on the date the complaint was filed. *Aponte–Dávila v. Municipality of Caguas*, 828 F.3d 40, 46 (1st Cir. 2016) ("[d]iversity must be complete"). Because all parties appear to be Maine citizens for purposes of diversity jurisdiction, the Court may only exercise supplemental jurisdiction over Plaintiff's state law claims if there is federal question jurisdiction over Plaintiff's DTSA claim. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a

3

plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims"). If Defendants prevail on their contention that Plaintiff cannot obtain injunctive relief under the DTSA and that dismissal of Plaintiff's complaint is appropriate, Plaintiff would presumably pursue its remaining claims in state court.

The DTSA is similar to a model statute adopted by many states, the Uniform Trade Secrets Act (UTSA). *Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020). The DTSA provides a civil action to an "owner of a trade secret that is misappropriated . . . if the trade secret relates to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A court may award damages, including exemplary damages for willful or malicious misappropriation, *id.* § 1836(b)(3)(B), and a court may grant an injunction "to prevent any actual or threatened misappropriation . . . ." *Id.* § 1836(b)(3)(A)(i).

In certain respects, however, "the language of the DTSA is distinct from other trade secret statutes." *Attia*, 983 F.3d at 424. Unlike state statutes based on the UTSA, the DTSA provision empowering courts to enjoin actual or threatened misappropriation is qualified. A court may not grant an injunction that "conflict[s] with an applicable State law prohibiting restraints on the practice of a lawful profession, trade or business," *id.* § 1836(b)(3)(A)(i)(II), and an injunction may not "prevent a person from entering into an employment relationship and . . . conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows." *Id.* § 1836(b)(3)(A)(i)(I). Defendants argue that Plaintiff's requested injunctive

4

relief is specifically unavailable under DTSA because an injunction would prevent Defendants from "entering into an employment relationship" and would place conditions on their employment based "merely on the information [Defendants] know[ ]."

In support of its claim for relief in this matter, Plaintiff relies on what is often referred to as the "inevitable disclosure doctrine." According to one court:

> The inevitable disclosure doctrine provides that a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets. The doctrine enables a trade secret owner to prevent a former employee from working for a competitor by demonstrating the employee's new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets. The doctrine may impose a noncompete covenant where one does not exist or, as in this case, extend a covenant not to compete beyond the time negotiated by the parties. Among the factors that courts consider in applying the doctrine are whether: (1) the employers are direct competitors providing similar products and services; (2) the employee's position with the new employer has responsibilities similar to the position held with the former employer; (3) the employee will be unable to complete those responsibilities without relying on the former employer's trade secrets, and (4) the trade secrets are valuable to both employers. Many courts also consider the former employee's bad faith conduct or intent to disclose trade secrets as a factor in determining whether to apply the doctrine.

*Holton v. Physician Oncology Servs., LP*, 742 S.E.2d 702, 705 (Ga. 2013) (internal quotations, citations, and modifications omitted).

Plaintiff alleges that it is inevitable that Defendants will use or reveal Plaintiff's trade secrets and it would be impossible for Defendants to work in their new roles without relying on or revealing Plaintiff's trade secrets. (Complaint ¶¶ 33–37, 51–53, 63–65). Plaintiff does not allege that Defendants wrongfully retained Plaintiff's data or documents, nor that Defendants made any statements or threats to reveal any of Plaintiff's trade secrets.

5

Defendants maintain that given the alleged facts, Plaintiff's claim is based solely on Defendants' knowledge.

Because Plaintiff's claim and request for injunctive relief are based on its contention that Defendants necessarily will use or disclose information known to Defendants, the central issue on Plaintiff's request for injunctive relief is whether the circumstances alleged constitute a threatened misappropriation or a claim based merely on Defendants' knowledge. Resolution of the issue will likely also inform the Court's decision on Defendants' anticipated motion to dismiss. The question is thus whether Plaintiff can obtain injunctive relief under the DTSA based on the inevitable disclosure doctrine.

Defendants' argument that Plaintiff cannot obtain the requested relief is not without merit. Consistent with Defendants' argument, at least one scholar has observed that the inevitable disclosure doctrine might have informed the DTSA requirement that an injunction must be based on threatened misappropriation and not merely on the information a person knows. *See* M. Claire Flowers, *Facing the Inevitable: The Inevitable Disclosure Doctrine and the Defend Trade Secrets Act of 2016*, 75 Wash. & Lee L. Rev. 2207, 2230–31 (2018) (arguing that the legislative history and plain language "indicate that Congress did not intend for courts to apply inevitable disclosure in DTSA claims").

Plaintiff relies primarily on the Third Circuit's decision in *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 76 (3d Cir. 2017), to support its contention that the doctrine can support its claim and request for injunctive relief. In the case, the court found a sufficient showing of irreparable harm for purposes of a preliminary injunction because "[u]nder the statutes giving rise to Fres-co's cause of action, misappropriation of trade

6

secrets need not have already occurred to warrant injunctive relief; threatened misappropriation is sufficient." *Id.* (citing the DTSA and Pennsylvania trade secrets statute). The Third Circuit reasoned that there was a "threat" of misappropriation based on the "substantial overlap" of the defendant's roles, within the "same industry" and the "same geographic region." *Id.* The court did not explicitly refer to the inevitable disclosure doctrine, but the reasoning arguably endorses it.[1]

The parties' arguments demonstrate that the issue is largely a legal rather than a factual issue. The Court discerns no reason to deviate from the general rule to defer discovery until after the Court determines whether Plaintiff can proceed on its federal claim. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (noting that pleading rules "do[ ] not unlock the doors of discovery for a plaintiff" with a complaint that fails to state a valid claim); *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) (plaintiffs are generally not entitled to discovery before resolution of a motion to dismiss because "dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive . . .").

The Court believes the appropriate course is to coordinate the briefing on Plaintiff's request for injunctive relief and Defendants' motion to dismiss. Given the nature of the claim and the potential harm alleged by Plaintiff, the Court also believes the motion practice should be expedited to some degree.

---

[1] The court's approval of an inevitable disclosure theory is not necessarily surprising, as the state law at issue in that case approves of the doctrine. *See Alchem Inc. v. Cage*, No. 2:20-CV-03142-JDW, 2021 WL 4902331, at *5 (E.D. Pa. Oct. 21, 2021). The Third Circuit did not discuss the § 1836(b)(3)(A)(i)(I) limitations on DTSA claims for injunctive relief.

## CONCLUSION

Based on the foregoing analysis, the Court denies Plaintiff's motion for expedited discovery.  The Court further orders:

1. On or before May 23, 2022, Defendants shall file their response to Plaintiff's motion for preliminary injunction and file their motion to dismiss.

2. On or before June 6, 2022, Plaintiff shall file their response to Defendants' motion to dismiss and their reply memorandum in support of their motion for preliminary injunction.

3. On or before June 13, 2022, Defendants shall file their reply memorandum in support of their motion to dismiss.

## **NOTICE**

Any objections to the Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 9th day of May, 2022.